**WO**                                                                                         SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Matthew Lee Galvan, | No. CV 10-0125-PHX-GMS (MHB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Joseph M. Arpaio, | |
| Defendant. | |

Plaintiff Matthew Lee Galvan filed this civil rights action under 42 U.S.C. § 1983 against Joseph Arpaio, Maricopa County Sheriff. (Doc. 1.) Defendant moves for summary judgment on the remaining claim that Plaintiff's constitutional rights were violated by Defendant's policy of feeding inmates insufficient and nutritionally inadequate food (Count I).[1] (Doc. 26.) The Court provided the required notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), and an extension of time to respond, but Plaintiff failed to respond, and the time to do so has expired. (Docs. 28, 30.)

The Court will grant the motion and dismiss the action.

**I.     Motion for Summary Judgment**

    **A.     Legal Standards**

        **1.     Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine

---

[1] The Court previously dismissed Count II. (Doc. 16.)

issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

///

### 2. **Fourteenth Amendment**

A pretrial detainee's claim for unconstitutional conditions of confinement arises from the Due Process Clause rather than from the Eighth Amendment prohibition against cruel and unusual punishment. Bell v. Wolfish, 441 U.S. 520 (1979). The specific inquiry with respect to pretrial detainees is whether the prison conditions amount to "punishment" without due process in violation of the Fourteenth Amendment. Id. at 535. This standard differs from the standard relevant to convicted prisoners, who may be subjected to punishment as long as it does not violate the Eighth Amendments prohibition on cruel and unusual punishment. Pierce v. County of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008).

A pretrial detainee's due process rights are at least as great as a convicted prisoner's Eighth Amendment rights. Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003). The Ninth Circuit has held that pretrial detainees' rights are comparable to prisoners' rights under the Eighth Amendment, and so the same standards apply. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (relying on Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991)). Contra Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) (the "more protective" Fourteenth Amendment standard applies to conditions of confinement when detainees have not been convicted of a crime). As a minimum standard, the Eighth Amendment requires that prison officials ensure that inmates receive adequate food, clothing, shelter, sanitation, and medical care, and take reasonable measures to guarantee inmates' safety. Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 832 (1994). In determining whether a violation has occurred, a court should consider the circumstances, nature, and duration of a deprivation of these necessities. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

///

///

///

///

**B.    Parties' Contentions**

    **1.    Defendant**[2]

Defendant asserts that the Maricopa County Sheriff's Office (MCSO) retains a Registered Dietician whose duties include preparing menus and performing annual menu analyses to track calories and nutritional content of MCSO menus for food service in the County jail facilities. (DSOF ¶ 7.) The MCSO dietician also inspects the jail food service facilities to ensure that portions are correct and that health and hygiene regulations are followed. The dietician's duties include (1) planning and developing weekly menus to make efficient use of inventory and meet nutritional requirements of the inmates; (2) performing nutritional analysis for all menus; (3) conducting orientation and in-service training on diets for food service and medical personnel; (4) developing diet modifications from master menu as needed; and (5) assisting in the review of nutritional content of all food products purchased by MCSO, to ensure that United States Department of Agriculture (USDA) Dietary Guidelines are met. (Id. ¶ 9.)

Defendant contends that under MCSO policy, all inmates are provided with nutritionally adequate meals that are prepared and served in a manner that meets governmental health and safety standards. (Id. ¶ 10.) Inmates are provided a daily "sack" lunch and one hot meal in the evening. (Id. ¶ 11.) Menus meet or exceed the daily USDA-recommended calories for a sedentary adult. (Id. ¶ 12.) Meals are designed so they include sufficient calories to provide adequate daily nutrition. (Id. ¶ 14.)

Defendant alleges that sanitarians are employed with MCSO Food Services to ensure that meals prepared and delivered to the jails meet food safety requirements set by Maricopa County Environmental Services (MCES aka the Health Department), as well as MCSO safety

---

[2]In support of his motion, Defendant submits his Statement of Facts (Doc. 27 (DSOF)) and exhibits, including the declaration of Kundavaram Reddy, registered dietician employed by MCSO (id., Ex. 2), with attachments (MCSO Policy DG-1, Menu Planning and Nutritional Adequacy for Inmates (id., Ex. A), Policy DG-2, Meal Distribution (id., Ex. B), Policy DG-3 Food Services Section Safety and Sanitation (id., Ex. C)); and the declaration of Laura Belcourt, Quality Coordinator assigned to MCSO Food Services (Ex. 3).

1 and sanitation the policies. (Id. ¶ 15.) In July 2009, MCSO Food Services worked with MCES to establish a time-based criteria for food safety, rather than a temperature based criteria for the evening meals while in transit to inmate housing units. (Id. ¶ 16.) Hot menu items are cooked to and then held at a safe temperature prior to being placed on meal trays, and temperature logs are maintained to verify compliance with the meal service procedure. (Id. ¶ 17, 18.). Under the time-based criteria, food temperatures of inmate meals are monitored and recorded, and the carts containing the meals are marked as "safe to eat within 4 hours." (Id. ¶ 19.) Quality Assurance staff visits the Maricopa County detention facilities to monitor food delivery, storage, and handling several times each week. (Id. ¶ 21.)

As to sack lunches, once they are prepared, they are placed in coolers for distribution to facilities within a few days. (Id. ¶ 29.) Sack lunches are stored in coolers at all points during storage, transportation and at the facility prior to being distributed to inmates. (Id. ¶ 30.) Defendant acknowledges that it is possible for mold to develop on fruit or occasionally the bread, which has no preservatives, but contends that additional sack lunches are always supplied to facilities so that a lunch can be replaced if an inmate finds he is missing a component or has a quality complaint. (Id. ¶ 31.) Additional hot meal trays are also available if an inmate raises a concern about his dinner meal. (Id. ¶ 32.)

Defendant also asserts that date marking of meat products is scrupulously monitored by staff sanitarians. (Id. ¶ 36.) The Quality Coordinator can visit any of the jail facilities, inspect the pallet the sacks were received on, and determine based on the pallet tag the date the meat was removed from the freezer. (Id. ¶ 37.) MCSO Food Services does not serve spoiled or expired meat. (Id. ¶ 38.)

Defendant argues that there is no respondeat superior liability under § 1983. (Doc. 26 at 7.) To establish Defendant's liability, Plaintiff must identify the specific custom or policy and establish a "direct causal link" between that policy and the alleged unconstitutional deprivation. (Id. 7-8, citing City of Canton v. Harris, 489 U.S. 378, 388-90 (1989).) Defendant argues that he has provided evidence that the quantity and quality of food served to inmates of the Maricopa County jails is sufficient to provide adequate daily

1 nutrition and maintain good health and that Plaintiff cannot point to a constitutionally
2 deficient policy. (Id. at 10-11.)

### 2. Plaintiff

As noted, Plaintiff failed to respond to Defendant's motion for summary judgment. Because a verified complaint may be used as an affidavit opposing summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence, the Court will consider the allegations set forth in Plaintiff's Complaint. Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995); see Johnson v. Woodford, 336 Fed. App'x 594 (9th Cir. 2009) (the court must consider a pro se plaintiff's verified complaint) (citing Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004)). In his Complaint, Plaintiff alleged that Defendant deliberately feeds only two meals per day and that they lack nutrition, the portions are too small to satisfy hunger, and the food is stale and rotten. (Doc. 1.)

### C. Analysis

The Court will grant summary judgment to Defendant on the remaining claim. There is no evidence that Defendant personally prepares and serves meals to inmates; rather, Plaintiff claims Defendant has a policy of providing nutritionally inadequate meals of deficient quality. But Defendant submits evidence that MCSO has a policy to provide nutritionally adequate meals that meet health and safety standards for quality. Plaintiff fails to dispute this evidence with his own evidence showing otherwise. There is no constitutional right to receive three meals per day; there is only a right to receive adequate food. Hoptowit, 682 F.2d at 1246. Because Plaintiff fails to respond, he does not create a triable issue of fact as to the constitutionality of the policy. Plaintiff's conclusory statements in his Complaint are not sufficient to defeat summary judgment. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

///
///
///
///

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn for Defendant's Motion for Summary Judgment (Doc. 26).

(2) Defendant's Motion for Summary Judgment (Doc. 26) is **granted**, and the claim in Count I is dismissed.

(2) The action is terminated, and the Clerk of Court must enter judgment accordingly.

DATED this 14th day of December, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge